IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


| | |
|---|---|
| THOMAS JOHN BJORDAHL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| QWEST COMMUNICATIONS INTERNATIONAL,) | |
| INC., et al., ) | |
| ) | No. 2:09-cv-0776-HRH |
| Defendants. ) | |
| _____) | |


This Order Relates to the Following Cases:

| | |
|---|---|
| 2:09-cv-00776-HRH | 2:09-cv-00778-HRH |
| 2:09-cv-00785-HRH | 2:09-cv-00791-HRH |
| 2:09-cv-00793-HRH | 2:09-cv-00794-HRH |
| 2:09-cv-00798-HRH | 2:09-cv-00802-HRH |
| 2:09-cv-00804-HRH | 2:09-cv-00805-HRH |
| 2:09-cv-00787-HRH | 2:09-cv-00796-HRH |
| 2:09-cv-00797-HRH | 2:09-cv-00800-HRH |
| 2:09-cv-00803-HRH | 2:09-cv-00807-HRH |


O R D E R

Motion for Attorney Fees

The settling plaintiffs move for an award of attorney fees and costs.[1]  This motion is opposed.[2]  Oral argument has not been requested and is not deemed necessary.

---

[1]Docket No. 38.

[2]Docket No. 51.

Background

On March 31, 2006, Steven Brechler filed a Fair Labor Standards Act (FLSA) collective action complaint in which he alleged that Qwest's call center consultants were not being paid overtime for off-the-clock work.[3] On November 27, 2006, the court denied a motion for certification of a nationwide class of consultants.[4] Conditional certification of a class that included only consultants from the consumer department of Qwest's Phoenix call center was then requested. On May 21, 2007, the court conditionally certified the narrower class. Somewhere between 104 and 110 individuals opted in to the collective class, although by March 2008, the number of opt-ins had dropped to 83.

On March 17, 2009, the court decertified the collective action and dismissed the claims of the opt-ins without prejudice.[5] The collective action was decertified because discovery revealed differences in the claims of the opt-ins. Twenty-six of the former opt-ins filed individual cases.

In December 2009, sixteen of the plaintiffs in the individual cases settled their claims for $13,943.10 combined,[6] which was

---

[3]See Docket No. 1. in Case No. 2:06-cv-00940-HRH.

[4]See Docket No. 74 in Case No. 2:06-cv-00940-HRH.

[5]See Docket No. 326 in Case No. 2:06-cv-00940-HRH.

[6]Declaration of Daniel C. Barr in Support of Defendant Qwest's Opposition to Plaintiffs' Rule 54(D)(2) Motion for Attorneys' Fees
(continued...)

approximately 30% of the damages they sought.[7]  The settling plaintiffs now move for an award of attorney fees and costs.  The settling plaintiffs seek an award of fees in the amount of $167,322.80 and costs in the amount of $9,646.35.[8]

## Discussion

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  The settling plaintiffs seek fees and costs incurred during the collective action and also fees and costs incurred while they pursued their claims in individual actions.  The fees and costs during the latter time period were billed in two ways.  There was a general account that included billings for activities applicable to all of the individual plaintiffs, and there were individual billing accounts for each of the settling plaintiffs.

As an initial matter, defendants contend that the settling plaintiffs cannot recover any fees and costs incurred during the collective action.  Defendants argue that section 216(b) of the FLSA

---

[6](...continued)
at 2, ¶ 6, Docket No. 52.

[7]See Plaintiff's [sic] Reply in Support of Rule 54(D)(2) Motion for Attorneys' Fees at 10, Docket No. 53.

[8]The settling plaintiffs originally sought costs in the amount of $11,725.82.  In their reply brief, they reduced the amount of their cost request to $9,646.35.

authorizes an award of fees and costs <u>only</u> in "the action" in which a plaintiff prevails. Because the settling plaintiffs did not prevail in the collective action, defendants argue that the settling plaintiffs are not entitled to recover any fees and costs incurred in the collective action.

The defendants in <u>O'Brien v. Ed Donnelly Enterprises, Inc.</u>, 575 F.3d 567, 576 (6th Cir. 2009), made the same argument, which was rejected by the court. The court explained that "[s]uch a wooden reading of the statute is unnecessary" because discovery concerning the individual plaintiffs' claims took place during the collective action. <u>Id.</u> The court reasoned that the individual plaintiffs were entitled to recover fees and costs incurred during the collective action if those expenses "benefitted" their claims. <u>Id.</u> This court finds <u>O'Brien</u> persuasive and similarly holds that the settling plaintiffs may recover fees and costs incurred during the collective action, to the extent that those fees and costs benefitted the settling plaintiffs' individual claims and to the extent that the fees are reasonable.

We turn then to the question of whether the fees the settling plaintiffs are requesting are reasonable. "The starting point for determining a reasonable fee is the 'lodestar' figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate." <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1397 (9th Cir. 1992). To calculate the lodestar, plaintiffs have relied upon the actual

billing rates of their attorneys and paralegals and have multiplied those rates times the actual hours expended.

Defendants argue that the rates charged by three of the attorneys are unreasonable as are the rates charged by some of the paralegals. The three attorneys in question are Wendy J. Harrison, Guy A. Hanson, and M. Jill Rencher. Harrison is a partner with 20 years experience who billed at rates of $475, $525, and $575 per hour during the course of this litigation.[9] Hanson is a senior associate with almost 20 years of experience who billed at the rate of $475 per hour.[10] Rencher is an associate with 1.5 years of experience who billed at the rate of $250 per hour.[11] In support of their argument that these rates are not reasonable, defendants cite a survey done by the State Bar of Arizona on billing rates.[12] The survey indicates that the median rate for a lawyer with 16-20 years experience is $250; for a lawyer with 1-2 years experience, it is $185; and for an attorney in the field of labor relations, it is $275.[13] Defendants also point out that other attorneys with experience levels similar

---

[9] See Affidavit of Guy A. Hanson, Esq. in Support of Plaintiffs' Motion for Attorneys' Fees at 7, ¶ 24, Docket No. 43.

[10] Id.

[11] Id.

[12] State Bar of Arizona, Economics of Law Practice in Arizona at 24-25 (2007), pertinent portion is attached as Exhibit 3 to Barr Declaration, Docket No. 52.

[13] Id.

to that of Rencher billed at much lower rates.  Dana Hooper, who has five years of experience, billed at a rate of $180; and Ty Frankel, who has one year of experience, billed at a rate of $160.[14]  Defendants also point out that Harrison and Hanson billed at a rate higher than their counsel, whose "standard hourly rate ... is $485", but whose hourly rate for Qwest matters is $446.20.[15]  Thus, defendants argue that the rates charged by Harrison, Hanson, and Rencher are not reasonable.  They request that the rates for Harrison and Hanson be reduced to $400 per hour and the rate for Rencher be reduced to $160.

As for the paralegals, defendants take exception to the fact that some billed at a rate of $145, while some billed at a rate of $100.  Defendants argue that the settling plaintiffs fail to explain the differences in the rates, and they contend that the median rate for paralegals in the Phoenix market is $100.[16]  Defendants request that all paralegal rates be reduced to $100.

---

[14]See Hanson Affidavit at 2, ¶ 4; 3, ¶ 8; and 7, ¶ 24, Docket No. 43.

[15]Declaration of Daniel C. Barr in Support of Defendant Qwest's Attorneys' Fee Motion (dated April 14, 2010) at 2, ¶¶ 8-9, Docket No. 386 in Case No. 2:06-cv-00940-HRH.

[16]See State Bar of Arizona, Economics of Law Practice in Arizona at 26 (2007), pertinent portion is attached as Exhibit 3 to Barr Declaration, Docket No. 52.

"A district court should calculat[e] the reasonable hourly rate according to the prevailing market rates in the relevant community, which typically is the community in which the district court sits." Schwarz v. Sec. of Health & Human Srvcs., 73 F.3d 895, 906 (9th Cir. 1995) (citations omitted). The court is mindful that "[t]his determination 'is not made by reference to rates actually charged the prevailing party.'" Id. at 908 (quoting Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986)). "Rather, the court 'should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" Id. (quoting Chalmers, 796 F.2d at 1210-11).

The court is unconvinced that the actual rates charged by the settling plaintiffs' attorneys are out of line with prevailing market rates. The rates charged by Harrison and Hanson, while high, are not unreasonable for the Phoenix market. In fact, the rates are similar to those charged by defendants' attorneys, rates that the court previously observed "are no doubt commensurate with customary billing rates in the community."[17] As for the rates of the paralegals, the court is also unconvinced that a $145.00 rate is unreasonable, particularly in light of the fact that defendants' counsel bills at least one of their paralegals at a rate of $215.00 per hour.[18]

---

[17]See Order re Motion for Attorney Fees at 3, Docket No. 401 in Case No. 2:06-cv-00940-HRH.

[18]See Affidavit of Guy A. Hanson, Esq. in Support of Reply
(continued...)

We next consider whether the number of hours expended were reasonable, beginning with the time spent on legal work during the collective action. The only legal work that reasonably can be included from the collective action is that which directly benefitted their individual claims. The settling plaintiffs contend that 1040.1 hours of legal work done during the collective action had a direct benefit to the claims of the individual plaintiffs.[19] More specifically, the settling plaintiffs contend that the discovery taken during the collective action and the work done on the second certification request provided a direct benefit to their individual claims. A total of $346,953.00 in fees were incurred in association with this work.[20] The settling plaintiffs seek their proportional share of this total, which they have calculated to be $58,615.84.[21]

---

[18](...continued)
Regarding Plaintiffs' Rule 54(D)(2) Motion for Attorneys' Fees at 2, ¶ 4, Docket No. 54.

[19]Qwest Collective Action – Consolidated Task-Based Fee Statement at 1, Exhibit 2, Hanson Affidavit, Docket No. 43.

[20]Id.

[21]The settling plaintiffs have calculated their share of the collective action fees using multipliers based on the total number of opt-ins. For the period from the inception of the collective action through March 21, 2008, there were 104 opt-ins, which results in a multiplier of .154 (16/104). From March 22, 2008 through March 17, 2009, there were 83 opt-ins, which results in a multiplier of .193 (16/83). See Memorandum of Points and Authnorities in Support of Plaintiffs' Rule 54(D)(2) Motion for Attorney's Fees at 7-8, Docket No. 42. Defendants do not object to the method used by the settling plaintiffs to calculate their proportional share.

As an initial matter, many of the 1040.1 collective action hours claimed by the settling plaintiffs were spent on tasks other than the taking of discovery and the second certification request. The 1040.1 hours include time spent on case management, initial disclosure statements, legal research, motion practice, notices of discovery and settlement, discovery requests propounded by defendants, and coding defendants' discovery. The settling plaintiffs have not adequately explained how any of this work directly benefitted their individual claims.

The settling plaintiffs have also not adequately demonstrated that the second certification request benefitted their individual claims. They contend that these fees benefitted their individual claims because it was the granting of this request that resulted in notice being sent to eight of the sixteen settling plaintiffs.[22] However, given that the second certification ultimately failed, the court finds that the settling plaintiffs are not entitled to recover the fees incurred for the work done on the second certification request.

The settling plaintiffs have adequately demonstrated that the discovery taken in the collective action benefitted their individual claims. Their counsel has set forth the specific documents obtained in each of the three requests for production that benefitted the settling plaintiffs' claims and has explained how the depositions

---

[22]Hanson Affidavit at 5, ¶ 18, Docket No. 43.

that were taken provided a benefit.[23]  Thus, the court finds that the time spent on taking discovery from defendants during the collective action was reasonably expended.

Defendants set out the hours that they believe were devoted to such work in Exhibit B to their opposition.[24]  They have calculated that the settling plaintiffs' counsel spent 165.1 hours on work related to plaintiffs' written discovery requests and to the taking of depositions.[25]  The court's review of the collective action fee statement[26] provided by the settling plaintiffs reveals an additional 90.9 hours that were spent on tasks related to the discovery propounded on defendants.  In particular, it is the court's view that time spent on preparing Rule 30(b)(6) deposition notices, locating deponents, analyzing the discovery received from defendants, and dealing with defendants' incorrect production of documents should be included.  In sum, the court finds that 256 hours were reasonably expended on taking discovery during the collective action and that this work directly benefitted the settling plaintiffs' claims.  The settling plaintiffs' proportional share of fees incurred for the hours reasonably expended in the collective action is $18,472.26.

---

[23]Id. at 5-7, ¶¶ 19-21.

[24]Docket No. 51.

[25]Exhibit B at 1-3, Qwest's Opposition to Plaintiffs' Rule 54(D)(2) Motion for Attorneys' Fees, Docket No. 51.

[26]Exhibit 2, Hanson Affidavit, Docket No. 43.

We turn then to the hours expended during the time in which the settling plaintiffs were pursuing their claims in individual actions. Some of the fees attributable to the individual actions were billed on what the settling plaintiffs refer to as a "consolidated basis." Any reference in this order to "consolidated" fees, hours, or work means the fees, hours, or work associated with these billings, even though the individual actions were never consolidated.

The settling plaintiffs claim that 306.6 hours of time was expended on "consolidated" work, resulting in a total of $90,167.00 in fees. The settling plaintiffs seek their proportional share of the $90,167.00 in "consolidated" fees, which they have calculated to be $58,328.96.[27]

Defendants argue that some of the "consolidated" hours were not reasonably expended, but rather were "excessive, redundant, or otherwise unnecessary[.]" Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). In particular, defendants contend that spending more than 40 hours working on the confidential memorandum submitted to the mediation judge was excessive, as was spending 20 hours preparing for the mediation and 14 hours working on the individual mediation memoranda. Defendants also suggest that much of this work could have

---

[27] The settling plaintiffs have calculated their proportional share using a multiplier based on the ratio of the settling plaintiffs to the total number of individual plaintiffs (16/26 = .615). See Memorandum of Points and Authorities in Support of Plaintiffs' Rule 54(D)(2) Motion for Attorneys' Fees at 8, Docket No. 42. Defendants do not object to the method used by the settling plaintiffs to calculate their proportional share.

been done by a less experienced lawyer, i.e., one who did not bill at the rate of $475 per hour.[28] Finally, defendants contend that plaintiffs propounded unnecessary discovery during this phase of the case. Defendants contend that a reasonable number of "consolidated" hours is 209.4.[29] Defendants arrived at this number by reducing the number of hours expended by Harrison from 5.6 to 2; and they reduced Hanson's hours from 120 to 60 and Hooper's from 83.6 to 50.[30]

The court finds that the number of "consolidated" hours was excessive. The time spent by Hanson on some tasks, particularly those associated with the mediation, was excessive for an attorney with his experience. While the court agrees with defendants that the number of hours attributable to Hanson should be reduced, cutting Hanson's hours in half is not warranted. Rather, the court finds that a reduction of 40 hours would be reasonable. Therefore, Hanson's hours will be reduced from 120 to 80. No reductions in the number of hours attributable to Harrison or Hooper are necessary. With the reduction to Hanson's hours, the total number of "consolidated" hours is 266.6, which the court finds to be a reasonable number of hours to have been expended on the "consolidated" work.

---

[28]Hanson, who bills at a rate of $475 per hour, billed approximately 40% of the "consolidated" hours (120 out of 306.6). See Qwest Individual Cases – Consolidated Task-Based Fee Statement at 1, Exhibit 3, Hanson Affidavit, Docket No. 43.

[29]See Exhibit D, Qwest's Opposition to Plaintiffs' Rule 54(D)(2) Motion for Attorneys' Fees, Docket No. 51.

[30]Id. at 1.

The settling plaintiffs' proportional share of the fees incurred for the 266.6 hours of "consolidated" work is $43,767.71.[31]

Finally, the settling plaintiffs claim that 219 hours of work was reasonably expended on the individual actions. Other than their general objection to the rates charged by some of the settling plaintiffs' attorneys, defendants have raised no objections to the fees incurred in the individual actions. The court finds the number of hours expended in the individual actions to be reasonable. The fees incurred for the 219 hours expended in the individual actions are $50,378.00.

Based on the foregoing, the court finds the lodestar figure to be $112,617.97.[32] "The lodestar figure is presumptively reasonable." Rouse v. Law Offices of Rory Clark, 603 F.3d 699, 704 (9th Cir. 2010). "Adjustments to the lodestar amount are allowed only if circumstances warrant and are reserved for rare or exceptional cases." Id. (citations omitted). "Adjustments must be carefully tailored, drawing from a finite pool of factors relevant to the reasonableness determination and only to the extent a factor has not been subsumed within the lodestar calculation." Id. Local Rule 54.2(c)(3) sets forth factors to be considered in assessing whether attorney fees are reasonable. The Rule 54.2 factors are almost

---

[31] The total "consolidated" fees were $90,167. $19,000 (40 hours x $475, Hanson's billing rate) was subtracted from that number, resulting in a total of $71,167. (71,167 x .615 = 43,767.71).

[32] 18,472.26 + 50,378.00 + 43,767.71 = 112,617.97.

identical to the factors set forth in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69-70 (9th Cir. 1975).

The Rule 54.2 factors are

> (A) The time and labor required of counsel;
> (B) The novelty and difficulty of the questions presented;
> (C) The skill requisite to perform the legal service properly;
> (D) The preclusion of other employment by counsel because of the acceptance of the action;
> (E) The customary fee charged in matters of the type involved;
> (F) Whether the fee contracted between the attorney and the client is fixed or contingent;
> (G) Any time limitations imposed by the client or the circumstances;
> (H) The amount of money, or the value of the rights, involved, and the results obtained;
> (I) The experience, reputation, and ability of counsel;
> (J) The "undesirability" of the case;
> (K) The nature and length of the professional relationship between the attorney and the client;
> (L) Awards in similar cases;
> (M) Any other matters deemed appropriate under the circumstances.

LRCiv. 54.2(c)(3).

Factors (A), (C), (E), and (I) have been subsumed in the lodestar calculation. The parties' reasonableness arguments focus on factor (H). The settling plaintiffs argue that the fees they are requesting are reasonable given the value of the rights vindicated in this case. They contend that fees awards in FLSA cases are not measured in relation to the underlying monetary relief obtained by the plaintiffs. As the Sixth Circuit has explained,

> [t]he purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourage[s] the vindication of congressionally identified policies and rights. Indeed, we have upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.

Fegley v. Higgins, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (citations omitted). The Ninth Circuit has also explained that "courts should not reduce lodestars based on relief obtained simply because the amount of damages recovered on a claim was less than the amount requested." Quesada v. Thomason, 850 F.2d 537, 539 (9th Cir. 1988).

But, the amount of success obtained by the settling plaintiffs is still a factor to be considered. See McGinnis v. Kentucky Fried Chicken of Cal., 51 F.3d 805, 810 (9th Cir. 1994) (observing that "no reasonable person would pay lawyers $148,000 to win $34,000"). The settling plaintiffs, while vindicating important rights, only recovered 30% of the damages that they sought, and they seek to recover in attorney fees almost twelve times what they recovered in damages. While the settling plaintiffs' lack of success was not as drastic as in some of the cases cited by defendants,[33] it does suggest

---

[33]See Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 558 (7th Cir. 1999) (plaintiff recovered 4.4% of relief sought); Hilton v. Exec. Self Storage Assocs., Inc., Civ.A. No. H-06-2744, 2009 WL 1750121, at *16 (S.D. Tex. June 18, 2009) (plaintiff recovered 1% of relief sought); Powell v. Carey Int'l, Inc., 547 F. Supp. 2d 1281, (continued...)

that a reduction to the lodestar amount is warranted. Consideration of other Rule 54.2 factors also indicates that some reduction to the lodestar is warranted in this case. The settling plaintiffs' counsel do not contend that taking this action precluded them from taking other work or imposed any particular time limitations upon them. The settling plaintiffs concede that their FLSA claims were "relatively straightforward" and although they contend that "the factual circumstances from which they arise [were] relatively complicated[,]"[34] it is the court's opinion that this was a run-of-the-mill FLSA case. This was not an undesirable case.

Defendants suggest that a 67% reduction to the lodestar amount would be reasonable. However, given the nature of this case, the court finds that a 40% reduction to the lodestar represents an appropriate balance between the settling plaintiffs' lack of success and the importance of the rights they vindicated. Thus, the settling plaintiffs are entitled to an award of $67,570.78 in attorney fees.[35]

---

[33](...continued)
1296-97 (S.D. Fla. 2008) (plaintiffs recovered approximately 2% of relief requested); Wales v. Jack M. Berry, Inc., 192 F. Supp. 2d 1313, 1318, 1326 (M.D. Fla. 2001) (plaintiffs recovered less than 15% of relief ,requested).

[34]Memorandum of Points and Authorities in Support of Plaintiffs' Rule 54(D)(2) Motion for Attorneys' Fees at 4, Docket No. 42.

[35]As a double-check, the court also calculated a lodestar amount using a rate of $250 per hour and the number of reasonable hours as determined in this order. No distinction was made between rates for attorney work and rates for paralegal work. The court used the settling plaintiffs' multipliers to calculate their proportional
(continued...)

As noted above, the settling plaintiffs also request $9,646.35 in costs. The settling plaintiffs reduced their original cost request of $11,725.82 to $9,646.35 in response to defendants' arguments. The FLSA allows for the recovery of the "costs of the action." 29 U.S.C. § 216(b). The settling plaintiffs are entitled to $9,646.35 in costs.

## Conclusion

The settling plaintiffs' motion for attorney fees[36] is granted. The settling plaintiffs are awarded $67,570.78 in attorney fees and $9,646.34 in costs. The court assumes that defendants will pay these fees and costs and that within thirty days, dismissals will be filed in the above-numbered cases.

DATED at Anchorage, Alaska, this 13th day of September, 2010.

/s/ H. Russel Holland
United States District Judge

---

[35](...continued)
share for the collective action fees and the "consolidated" fees. The lodestar amount using this method was $108,091. If the same 40% reduction to the lodestar were taken, the settling plaintiffs would have been entitled to $64,855 in fees.

[36]Docket No. 38.